FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

99 JUN 16 PM 1: 35

U.S. DISTRICT COURT
N.D. OF ALABAMA

ALEXIS HERMAN, Secretary of Labor,
United States Department of Labor, and
HARRY SKIDMORE, District Director,
Office of Workers' Compensation Programs,
United States Department of Labor,

      PLAINTIFFS,

v.

                                 CASE NO.: CV-95-J-533-J

ALABAMA INSURANCE GUARANTY
ASSOCIATION,

ENTERED

JUN 1 6 1999

      DEFENDANT.

## MEMORANDUM OPINION

The parties having represented to this court that this case is appropriate for disposition

on cross motions for summary judgment and the parties having filed such motions (docs. 31

and 37) and responses thereto, as well as evidence in support of their respective positions and

the court having considered said motions, briefs and evidence, the court finds as follows:

## PROCEDURAL HISTORY

This case arises under the Longshore and Harbor Workers' Compensation Act ("the

Longshore Act" or the "LHWCA"), 33 U.S.C. § 921(d), as incorporated by the Black Lung

Benefits Act (the "BLBA"), as amended, 30 U.S.C. § 932(a)(1982), and 30 U.S.C. §§

934(b)(4)(A) and (B), and the Declaratory Judgment Act, 28 U.S.C. § 2201.[1]

---

[1] In anticipation of trial, the parties provided this court with a proposed pre-trial order
which included an "agreed summary" of the case, which this court has adopted.

46

Willie Whitlow was employed with Contract Mining Company ("Contract Mining") in the State of Alabama, from December 15, 1970 to August 14, 1978. Mr. Whitlow filed an application for benefits under the BLBA with the Department of Labor ("the Department" or "DOL") on October 24, 1978. The Department served an Operator's Notification upon Contract Mining and Morrison Assurance Company, Inc. ("Morrison"), an insurance company licensed to do business in the State of Alabama, of the existence of Mr. Whitlow's claim. Pursuant to 20 C.F.R. § 726.208, Morrison had previously reported to the Department of Labor that it had issued a policy of insurance to cover Contract Mining's operations under the Black Lung Benefits Act for the period from December 29,1977, through December 29, 1978.

Morrison filed an Operator Controversion, contesting both Mr. Whitlow's entitlement to BLBA benefits and the status of Contract Mining as the putative responsible operator potentially liable for the payment of such benefits. Following a conference attended by the parties to Mr. Whitlow's BLBA claim on December 1, 1980, a DOL conference officer issued a Memorandum of Conference on September 9, 1981, recommending an award of benefits. Morrison declined to accept liability for Mr. Whitlow's claim and requested that the case be referred to the Office of Administrative Law Judges for a formal hearing. Pursuant to 26 U.S.C. §9501(d)(1)(A)(i), the Department commenced the payment of monthly benefits to Mr. Whitlow, and paid Mr. Whitlow a lump sum for benefits retroactive to October 1, 1978.

Morrison changed its name to First Southern Insurance Company on May 24, 1985.

After notice and a hearing, Administrative Law Judge Kenneth Jennings issued a decision

and order denying benefits on December 7, 1984. The Department ceased the payment of

interim benefits in November, 1985. The Director, Office of Workers' Compensation

Programs ("OWCP"), a statutory party to each claim, 30 U.S.C. § 932(k); 20 C.F.R. §

725.360(a)(5), filed a timely appeal with the Benefits Review Board (the "Board"). *See* 33

U.S.C. § 921(b), as incorporated by 30 U.S.C. § 932(a). In a decision and order issued on

December 31, 1997, the Board vacated the ALJ's decision and remanded the case for further

proceedings.

On September 21, 1988, ALJ Jennings issued a second decision and order, this time

awarding benefits. First Southern appealed the award to the Board. On December 21, 1990,

the board issued a decision and order affirming the award of benefits, but remanded the case

for further findings regarding the proper date for the commencement of benefits and the date

from which the operator's interest obligations should begin to accrue. On July 28, 1992, ALJ

Jennings issued his third decision, setting January 1, 1982 as the onset date of disability and

awarding interest payable from October 9, 1981.

In August, 1992, the Department sent a letter to the coal mine operator and counsel

for the operator and First Southern seeking reimbursement of the Trust Fund in the amount

of $25,598.00, paid as interim benefits, payment to the claimant of $48,678.50, and the

commencement of monthly benefits to the claimant beginning September, 1992. On October

3

2, 1992, the Leon County Circuit Court in Tallahassee, Florida declared First Southern insolvent and appointed the Florida Department of Insurance as a Receiver for purposes of liquidating First Southern, effective October 31, 1992. The court ordered that all claims be filed with the Receiver on or before May 3, 1993.

On November 7, 1992, the Alabama Insurance Guaranty Association wrote to Contract Mining Company specifically referencing Mr. Whitlow's claim.

On December 4, 1992, the Department issued a "Supplemental Award of Benefits ordering the responsible coal mine operator to reimburse the Trust Fund in the amount of $25,598.00 for interim benefits paid from the Trust Fund and $200.50 in diagnostic expenses; to pay Mr. Whitlow $50,942.79; and to commence the payment of monthly benefits for Mr. Whitlow beginning with those due for December, 1992. The Department reinstated the payment of benefits to Mr. Whitlow from the Black Lung Disability Trust Fund in February, 1993.

On March 6, 1995, the Department filed a complaint in this Court seeking an order compelling AIGA to commence monthly benefit payments to Mr. Whitlow, to reimburse the trust Fund for interim benefits paid to Mr. Whitlow, and to pay any additional compensation to Mr. Whitlow. On March 27, 1996, the district court, *sua sponte*, granted judgment in favor of the Department and ordered AIGA to commence the payment requested. On April 26, 1996, AIGA filed a timely appeal with the United States Court of Appeals for the Eleventh Circuit.

4

In August, 1996, the AIGA began making monthly benefit payments to Mr. Whitlow and also reimbursed the Fund, in the amount of $86,871.27, for all the interim benefits paid out by the Fund. On October 24, 1996, the Department received a check from AIGA in the amount of $45,176.09, representing interest owed to the Fund. This check placed AIGA in full satisfaction of the Judgment entered by the District Court. On June 11, 1997, the Eleventh Circuit vacated the Court's *sua sponte* order and remanded the case for an evidentiary hearing in this Court.[2]

## PLAINTIFFS' POSITION

The plaintiffs argue that prior to its insolvency, First Southern would have been liable for payment of the monies which have been paid to Mr. Whitlow by AIGA and the Black Lung Disability Trust Fund. The claims for monies paid by AIGA to Mr. Whitlow are "covered claims" within the meaning of the Alabama Insurance Guaranty Association Act. The claims for monies paid by AIGA to the Black Lung Disability Trust Fund are "covered claims" within the meaning of the Alabama Insurance Guaranty Association Act. The plaintiffs further allege that they are entitled to judgment against AIGA under LHWCA, 33 U.S.C. § 921(d), as incorporated by the Black Lung Benefits Act (the "BLBA"), as amended, 30 U.S.C. § 932(a)(1982), and 30 U.S.C. §§ 934(b)(4)(A) and (B). As the successor to First Southern Insurance Company under the Alabama Insurance Guaranty Association Act, AIGA is liable for all amounts paid out by the Black Lung Disability Trust Fund to Mr.

---

[2]On October 17, 1998, this case was reassigned to the undersigned (doc. 25).

5

Whitlow as BLBA benefits, with interest (30 U.S.C. §§ 934(b)(1) and (4)); for the additional compensation and interest paid to Mr. Whitlow (33 U.S.C. §§ 914(f) & 921(d), as incorporated by 30 U.S.C. § 932(a)); and for the cost of the pulmonary evaluation provided by DOL to Mr. Whitlow pursuant to 30 U.S.C. § 923(b).[3]

Furthermore, the plaintiff district director argues that he is entitled to injunctive relief requiring AIGA to continue to pay monthly benefits to Mr. Whitlow in the amounts required by, and at the times specified by, the BLBA (33 U.S.C. § 921(d), as incorporated by 30 U.S.C. § 932(a)). The plaintiffs also request a declaration that the amounts payable to Mr. Whitlow are not subject to the payment limitations of the Alabama Insurance Guaranty Association Act (28 U.S.C. § 2201).

## DEFENDANT'S POSITION

The AIGA argues that the issues in this case are controlled by the Alabama Insurance Guaranty Association Act, § 27-42-1, *et seq.*, Code of Alabama 1975. The defendant relies on sections 27-42-5(4) and 27-42-12 for the proposition that the AIGA is entitled to have the monies previously ordered paid by the District Court returned to it. The defendant asserts that the claim of the trust Fund is not a covered claim; that the AIGA is not obligated to

---

[3]As an operator of a coal mine, Contract Mining Company was required to secure the payment of benefits by qualifying as a self-insurer or insuring and keeping insured the payment of benefits with an insurance company or state fund. 30 U.S.C. § 933(a). This section also requires all coal mine operators to obtain insurance which contains a provision to pay benefits required under section 932 of the BLBA, notwithstanding the provisions of the state workmen's compensation law which may provide for lesser payments, and a provision that insolvency or bankruptcy of the operator shall not relieve the carrier from liability for such payments. 30 U.S.C. § 933(b)

reimburse the Trust Fund for monies the Trust Fund paid Mr. Whitlow under the "nonduplication of recovery" provisions of § 27-41-12; and that Mr. Whitlow's last day of exposure was possibly not within the policy periods of insurance coverage provided by First Southern Insurance and its predecessor.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a

7

material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929

F.2d 604, 608 (11th Cir.1991).

The basic issue before the court on a motion for summary judgment is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry*

*Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 47 U.S. at 251-252.

## LEGAL ANALYSIS

The facts before this court are not in dispute. The parties disagree solely as to the

proper interpretation of law as applicable to those facts. As such, the court agrees with the

parties that this case is appropriate for resolution on cross motions for the summary

judgment.

The defendant argues that the Black Lung Benefit Act and the Alabama Insurance

Guaranty Act are in conflict and, as such, the McCarran-Fergeson Act preempts the federal

law. 15 U.S.C. §§ 1011-1015. Because of this preemption, the defendant's argument

continues, this court must apply the Alabama Insurance Guaranty Association Act to the

exclusion of the Black Lung Benefit Act and hence, no basis for this court to grant the

plaintiffs' relief would exist.[4] *See* 15 U.S.C. § 1012.

---

[4] *See* AIGA's Response in Opposition to Plaintiff's (sic) Motion for Summary Judgment at 3 ("the legal issue to be decided by the court is whether the Fund can enforce a claim for reimbursement and subrogation against the Guaranty Association under the Alabama Insurance Guaranty Act"). To support this argument, the defendant argues that the Department of Labor is an insurer or insurance pool and that the BLBA does not specifically relate to the business of insurance. Reply Brief of AIGA at 2.

The Seventh Circuit has recently examined this question of preemption of federal statutes by state statutes. *Lovilia Coal Company v. Williams,* 143 F.3d 317 (7th Cir.1998). In that case, the Court recites the standards set forth for preclusion of preemption of state insurance law. Under this test, the McCarran-Fergeson Act precludes federal preemption of state law if: (1) the federal statute at issue does not "specifically relate to the business of insurance"; (2) the state statute at issue was "enacted for the purpose of regulating the business of insurance"; and (3) the application of the federal statute would "invalidate, impair, or supersede" the state statute. *Lovilia,* 143 F.3d at 324; citing *U.S. Dept. of Treasury v. Fabe,* 508 U.S. 491, 507, 113 S.Ct. 2202, 2211, 124 L.Ed.2d 449 (1993). The court then states, "[a]pplying the three criteria to the statute under consideration, we hold that Congress intended to bypass the McCarran Act in enacting the BLBA." *Lovilia,* 143 F.3d at 325.[5] *See also U.S. v. Rhode Island Insurers' Insolvency Fund,* 80 F.3d 616, 620 (1st Cir.1996) (concluding that the McCarran-Fergeson Act imposes no substantive constraint on Congress' power to regulate insurance, but rather creates a form of "inverse preemption" which allows state law to prevail over "general federal rules – those that do not specifically relate to the business of insurance").

The defendant also argues that only unpaid claims are "covered claims" and therefore, the AIGA never has to reimburse the payor of benefits because once the benefits are paid

---

[5]The Seventh Circuit also held that the BLBA specifically relates to the business of insurance and therefore does not implicate the McCarran-Fergeson Act. *Lovilia,* 143 F.3d at 325. This court agrees.

9

from any other source, a "covered claim" can, by definition, no longer exist.[6] The term "covered claim" is defined at § 27-42-5(4), Ala. Code, as "an unpaid claim ... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer .... 'Covered claim' shall not include any amount due any reimburser, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." The defendant argues that the Trust Fund is either an insurer or an insurance pool. Reply Brief of AIGA at 2. This court finds more persuasive the plaintiffs' argument that the Trust Fund is not an insurer, but rather a fund financed by the coal industry, pursuant to federal law, because of Congress' concern for the health and welfare of miners.[7]

Further convincing this court that Mr. Whitlow's claim is not within the exceptions listed in § 27-42-5(4) is the plaintiffs' argument that this provision does not limit the type of claim which may be paid, but rather the type of entity which can make a claim against it. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment at 17.

---

[6]This court finds this argument tantamount to a request that the AIGA should never have to pay under BLBA claims. By this definition of "covered claim" the AIGA could always withhold payment so that the Trust Fund steps in and then, when sued, never pay even wrongfully withheld amounts because the Trust Fund is designed to provide interim payments while, as in this case, the ALJ considered the case on its merits.

[7]*See* 30 U.S.C. § 901: "Congress finds and declares that there are a significant number of coal miners living today who are totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's coal mines; that there are a number of survivors of coal miners whose deaths were due to this disease; and that few States provide benefits for death or disability due to this disease to coal miners or their surviving dependents. It is therefore, the purpose of this subchapter, to provide benefits, in cooperation with the States, to coal miners ...."

10

The purpose of § 27-42-5(4), Ala. Code is to keep the AIGA out of subrogation claims of insurers and to insure that other sources of insurance, to the extent available, have paid first, to limit AIGA's liability. That section is not applicable to the facts before this court. Acceptance of the defendant's argument that Mr. Whitlow should recover his ongoing benefits from the Trust Fund would wipe out the entire purpose for the BLBA – to make sure that state law worker's compensation carriers pay black lung claims. This court finds that Ala. Code § 27-42-5(4), does not apply to the facts before this court as no possibility of recovery of benefits from another insurance source exists. Furthermore, the logic reading of the state statute provides that a "covered claim" does not include amounts due a reinsurer, insurer, insurance pool, or underwriting association, regardless of the type claims these entities are making, be they subrogation claims or otherwise. Thus, this court finds the plaintiffs' argument that the statute regulates the entity making the claim, not the type of claim, is better supported by the statute than the defendant's argument that this clause precludes all subrogation claims, regardless of who makes them. Plaintiffs' Reply to AIGA's Response in Opposition at 4.[8] This court also finds that the Trust Fund is not seeking a right of subrogation but rather makes a claim of direct entitlement, pursuant to federal statute.

---

[8]In interpreting the Alabama Insurance Guaranty Association Act, the Alabama Supreme Court has stated "We hold that the Alabama Insurance Guaranty Association is not entitled to reduce its obligation to a policyholder or claimant by the amount paid to that person as workman's compensation benefits...." *Alabama Ins. Guaranty Ass'n v. Magic City Trucking Service, Inc.*, 547 So.2d 849, 853 (Ala.1989)(Court further cited statement that "We are of the opinion that the (State) Fund is excused from paying claims if the ultimate beneficiary is an insurance company." *Ferrari v. Toto*, 9 Mass.App. 483, 486, 402 N.E.2d 107, 109 (1980), *aff'd* 383 Mass. 36, 417 N.E.2d 427 (1981)).

Hence, this court finds the Trust Fund's claim arose due to Morrison's challenge of Mr. Whitlow's right to benefits and not through any subrogation interest the Trust Fund may have.

This court finds that the BLBA is clear as to the United States' right to reimbursement. The BLBA states that "If any operator liable to the fund under paragraph (1) refuses to pay, after demand, the amount of such liability (including interest), then there shall be a lien in favor of the United States for such an amount...." 30 U.S.C. § 934(b)(2). Under 20 C.F.R. § 726.210, "every carrier seeking to write insurance under the provisions of this Act shall be deemed to have agreed that the acceptance by the Office of a report of the issuance or the renewal of a policy of insurance ... shall bind the carrier to the full liability for the obligations under this Act of the operator named in said report." In other words, Morrison, then First Southern, and finally AIGA, has stepped into the shoes of Central Mining Company, and thus, under 33 U.S.C. § 935, has the same obligations as the "operator" of the mine.

The plaintiffs' respond that because no conflict exists between the state and federal statutes, no question of preemption arises. The plaintiffs argue that the BLBA does specifically relate to the business of insurance and, as such, the McCarran-Fergeson Act is not at issue in this case. To support this point, the plaintiffs cite to the *Lovilia* Court's statement that "[t]he purpose of the BLBA is to ensure that all coal miners are covered by Workers' Compensation insurance ... the BLBA specifically relates to the business of

insurance..." *Lovilia*, 143 F.3d at 325. *See* 30 U.S.C. § 901(a). This court finds that the BLBA does specifically relate to the business of insurance. This court also finds that no conflict between the federal and state law exists and that an entity such as AIGA can comply with both statutes at the same time. The defendant's provision of benefits to the plaintiff is mandated by both laws.

As the defendant succinctly states, the BLBA requires coal mine operators to secure benefits for disabled miners through the purchase of workman's compensation insurance coverage.[9] If the responsible operator fails or refuses to secure payment of monthly benefits, then the federal government established the Trust Fund to provide coverage to disabled miners. The Alabama Act created a fund to alleviate the burden caused by a lack of coverage through no fault of the insured. AIGA's response in opposition at 7.

While the defendant finds a "legal paradox" thus created, this court agrees with the plaintiffs that no conflict exists. *See* Plaintiffs' Reply to AIGA's Response in Opposition at 2. The facts of this case fall neatly into this system. The original insurer, Morrison, became First Southern Insurance Company, which was declared insolvent in 1992. First Southern would have been liable for Mr. Whitlow's benefits but for its insolvency. Thus, the benefits previously secured through workman's compensation insurance as required by the BLBA were not available through no fault of the insured, therefore the fund created through the Alabama Act is required to alleviate this burden on the insured. *See* Ala. Code § 27-42-2

---

[9]*See* 33 U.S.C. § 935 and 20 C.F.R. § 726.207.

13

(the purpose of the Act is to provide a mechanism for the payment of covered claims and to "avoid financial loss to claimants or policyholders because of the insolvency of an insurer ...").

While the defendant argues that one act must give way to the other, and that "were it not for the Alabama Insurance Guaranty Association Act the federal government would have no recourse but to pay benefits from its trust fund" this court finds that if it were not for the AIGA trying to relieve itself of its clear liabilities under state and federal law, the amount due the Trust Fund would have been significantly smaller. As the plaintiff argues, the lien and hence the need for reimbursement were created by the defendant's refusal to pay the monthly benefits of Mr. Whitlow.[10] This court, finding no conflict between the two Acts, finds no preemption.[11] The court finds a significant difference in the BLBA being "related" to the business of insurance and the BLBA being "engaged in the business of insurance", which it is not.

---

[10]*See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion at 19. ("Retroactive benefits required to be paid by the terms of an administrative law judge's award must be considered "due" ... upon the award's becoming effective ...").

[11]The defendant also argues that "the Black Lung Benefits Act is not specifically related to the business of insurance." AIGA's Response in Opposition at 11; Reply Brief of AIGA at 4 ("The Trust Fund, created to pay benefits out of funds collected from coal operator assessments, is not an insurance company, nor does it issue a policy of insurance of any type"). The defendant then states that "the BLBA is workmen's compensation insurance ... The Fund, by assessing dues against coal operators and collecting the premiums to pay unpaid claims, has all the indications of an insurance pool." Reply Brief at 6. *See also* AIGA's Response in Opposition at 12-13 ("the fund, at a minimum invalidates ... the Alabama Act's stated purpose of avoiding financial loss to claimants because of the insolvency of the insurer. Since the Trust Fund paid Whitlow's claim, there is no financial loss to a claimant because of the insolvency of an insurer"). The defendant argues both that the BLBA is unrelated to the business of insurance and is an insurance fund. This court finds this argument unpersuasive.

14

While the defendant relies heavily on *Kachanis v. U.S.*, 844 F.Supp. 877 (D.R.I.1994) to support its proposition that the Department of Labor can be both an insurer and not related to the business of insurance, the court in that case stated "I agree with the United States that such an argument is inconsistent.... First, although I must confess that I am troubled by such a ruling, I am bound by precedent." *Kachanis*, 844 F.Supp. at 889. Since the time that ruling was entered, the *Lovilia* opinion has been issued. While neither of these cases constitutes binding precedent on this court, this court is of the opinion that a later Seventh Circuit Court of Appeals case dealing with the BLBA is more persuasive than an earlier District Court of Rhode Island case dealing with the FECA and therefore opts to follow the *Lovilia* court. Furthermore, the Alabama statute defines who is an insurer as "[e]very person engaged as an indemnitor, surety or contractor in the business of entering into contracts of insurance." Ala. Code § 27-1-2. The Trust Fund does not come within this definition.

The defendant also argues that under the Alabama Insurance Guaranty Association Act, the limit on any claim is $150,000.00. However, the clear language of the state states that the obligation to pay shall include "only that amount of each covered claim which is in excess of $100.00 and is less than $150,000.00, *except that the association shall pay the full amount of any covered employee benefit claim arising under Section A of workmen's compensation policy* (emphasis added)." Ala. Code § 27-42-8.

In consideration of the foregoing, it is **ORDERED** by the court that the plaintiffs' motion for summary judgment be and hereby is **GRANTED**. It is further **ORDERED** by

15

the court that the defendant's motion for summary judgment be and hereby is **DENIED.** Specifically, this court **ORDERS** as follows:

The defendant AIGA shall make all future payments of monthly benefits to Mr. Willie Whitlow as the same come due.

The defendant AIGA shall pay to Mr. Whitlow the sum of twenty percent of all benefits which were not paid or reimbursed, or which fail to be paid in the future, within the requisite ten day time period as stated in 20 C.F.R. § 725.607.

The defendant AIGA shall pay to Mr. Whitlow interest at the statutory rate for all past due benefits computed from September 27, 1988, the effective date of the ALJ's decision, until February, 1993, when interim benefit payments were commenced, in accordance with 20 C.F.R. § 725.608(a). *See* 30 U.S.C. § 934(b)(4)(A) and (B).

The court finds that the reimbursement amounts paid to the Black Lung Disability Trust Fund, in connection with the claim of Mr. Willie Whitlow, by the AIGA were due, owing and properly paid.

The defendant AIGA shall pay to the Trust Fund the sum of $200.50 for the pulmonary evaluation of Mr. Whitlow, which the Trust Fund paid pursuant to 30 U.S.C. §923(b) and 20 C.F.R. § 725.406(c).

**DONE** and **ORDERED** this the ___15___ day of June, 1999.

UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON

16